Wood, J.
This is a writ of error to- the Supreme Court of the- *418 county of Ross, made returnable in bank. Its object is tho reversal of a judgment of the Supreme Court, affirming *that of the common pleas, on a like writ of error, in a suit in which a recovery was had in the latter tribunal, by the defendants, against the plaintiff in error, for more than $17,000.
The amount of this recovery, alone, is sufficient to indicate its importance. It is, however, of little moment, in comparison with the rights and interests of the whole moneyed corporations of the state, and their debtors, when the extent is considered to which they will be affected, if not directly, at least indirectly, by a decision in tho highest judicial tribunal known to our law. Such adjudication must, of course, become tho rule of action, in all future cases which may arise, whore the facts are substantially tho same, and they are, at the present moment, believed to embrace evidences of claim to a very great extent.
We have, therefore, endeavored to bring all our energy into this investigation, to understand the facts, to apply the law, as we are enabled to find it exists, both from our own researches and tho lights afforded us by the counsel, who not only prosecute, but also defend, with ability and zeal. 'Amidst the storms of party conflict, and tho commotions incident to party animosity, originating, whether justly or unjustly, doubtless, in an honest conviction of tho hostility of banks to the welfare of the community, if we have been able to hold the scales of justice with a firm and ■steady hand, our duty is performed, and we are not responsible Tor tho result.
The papers in this case are voluminous, but the important inquiry is within a narrow sphere, and embraces nothing intricate .or difficult of solution.
The question is, did the court of common pleas err in its pro•ceedings, in the rendition of the judgment affirmed by the Supreme Court? If so, it follows, as a necessary result, that the judgment must be reversed. Or, in other words, did the Supreme Court err in the affirmance of that judgment? That it did err is the only error assigned, and in stating the proposition in either alternative, the record spreads before us the same ground of inquiry.
*The action was assumpsit, founded on four bills of exchange; the declaration containing also the common money counts. The first of these bills bears date at Cincinnati, *419 August ], 1837, at sixty days’ date, drawn by Cox and Eckart, on J. Cox, for $2,000, payable at the Bank of Louisville, to the order of John Creed, and by him indorsed to the Commercial Bank.
The second bill is by the same drawers, on J. Cox, of the same date, August 1, 1837, at the same place, for $3,000, at ninety days’ date, payable at the Bank of Kentucky, Louisville, to the order of Creed, and by him indorsed to the Commercial Bank.
The third bill is by the same drawers, on John Cox, New York, bearing the same date, at the same place, for $10,000, payable at four months, at the Bank of America, New York, to the order of George F. Ball, indorsed to Creed, and by him to the Commercial Bank.
The fourth is drawn by Cox and Eckart, on John Cox, New York, dated Cincinnati, January 30, 1838, for $5,829.47, at four months, payable at the Bank of America, New York, to the order of John Creed, and by him indorsed, in like manner, to the Commercial Bank.
To the declaration the plaintiff in error filed the plea of the general issue, and the cause was submitted to the jury, in the court of common pleas. A bill of exceptions was taken, during the progress of the trial, by the counsel for the plaintiff in error, and to that we must look, exclusively, for the history of the case, to sustain the assignment of error, for, aside from this, there is no error in the record.
To .this bill of exceptions we shall only refer for the important facts on which our conclusions are based, and leave the residue for a more convenient season, and for those whose tastes are curious in judicial history, to peruse at leisure, and this of necessity, for it contains twenty-three pages of closely written folio 1 It appears from it, the ground relied upon as a defense, in the court of common pleas, by the now plaintiff in error, was, that there was between the Commercial Bank and *the drawers, at the time of the sale, or discount, of these bills, some corrupt agreement or understanding, or some shift or device, by which more interest than at the rate of six per centum per annum, in advance, was reserved by the bank, as interest, for the use or loan of its money ; and assuming this as proved, it was then claimed, and is again urged, that these bills, thus bought or discounted, were void from a defect of power, in the defendants in error, to enter into any such contract. The Bank of Chillicothe v. Swayne et al., 8 *420 Ohio, 257, is cited as an authority. With the principles settled in that case we are entirely satisfied. They rest on safe and solid foundations, and sound policy requires they should be asserted and maintained. According to them, life and health, and energy and vigor, are only conferred upon a corporation by its charter. No natural rights are recognized ; its powers and privileges must be expressly conferred. None other are incorporated into existence, unless implied from strong necessity, in order to carry out those which are expressly granted. In the case of Bank of Chillicothe v. Swayne et al., the bill was discounted by the plaintiff, and more than six per cent, per annum reserved, in advance, as interest, against an express prohibition in the charter. It is clear that there was a defect of power, and the whole transaction void. Nor would this be a new principle, where all the parties are natural persons, that a bond, bill, or note, purporting to be executed, by A., should be declared void, because B. was not authorized to affix the seal or signature of A. We do not think it advisable to either enlarge or limit the principles fixed in the case above cited, but leave it on its own foundation for support.
The question then is, does this case come within it? The counsel for the bank contend that it does not. They urge that a charter is a contract, and by it the rate of interest is not fixed which they may receive on their loans and discounts. It is true¡ such express provision limiting the rate of interest, as exists in nearly every other bank charter in the state, either by mistake or design, was omitted in this, and in lieu thereof, it is provided, in the grant of power, that the corporation, among *other things, may discount bills of exchange on “banking principles and usages.” As other banks were then supposed to be limited to six per centum, and were so, mostly, by express prohibition to receive more, it is probable the legislature thought it a part of the “usages and principles of banks,” to discount bills of exchange at the rate of six per centum interest, in advance, and no more. In any event, it could never have been the design that the limit of exaction by any moneyed institution should only be fixed by its inordinate cupidity, and thirst after gain.
We should find no difficulty, were it ¡necessary in order to determine this case, in arriving at the conclusion, from the terms “principles and usages,” as employed in this charter, that the legislature intended to limit the discount on notes and bills, etc., to *421 six pei’ centum, in advance. But, if wrong in this, and if interest is entirely overlooked in this charter, it is clear it falls within the general law, which is applicable to natural persons, and can legally receive no more, nor could any usurious excess of interest be recovered by this corporation; and, placing a bank charter on the footing of a most solemn contract, unalterable by subsequent legislation, it is not violated by a law prescribing a rate of interest, which has not been fixed by its charter, but wholly omitted. A majority of the court, therefore, design expressly to be understood! that the Commercial Bank, under its charter, occupies the same ground, as the Bank of Chillieothe was .found to occupy in the case against Swayne and others, when the facts are the same. It can receive no more than six per centum per annum, in advance, as interest on its loans and discounts; and when it does receive more, there is a defect of power to make a valid contract.
Let us then look to the testimony, which is contained in the bill of exceptions, and see whether this transaction is brought within the case of the Bank of Chillieothe v. Swayne et al. Before proceeding to that evidence, however, it may be remarked, that after the defendants in error rested in the court of common pleas, having given in evidence the four bills of ^exchange counted upon in the declaration, Creed, the defendant below, offered in evidence to the jury seven other bills of similar character and amounts, a part or all of which, it was claimed, formed a connected transaction with the bills in suit, which were given to renew prior paper, and also an abstract of an account current of Cox and Eckart with the Commercial Bank. This evidence went to the jury without exception, and it was claimed’that it conduced to prove the issue made, that the Commercial Bank, when the bills in suit were purchased, reserved more than six per centum, in advance, as interest.
Hall was then called by Creed, the defendant below, as a witness, and testified, that he had been the cashier of the Commercial Bank since the year 1836 ; that on the 30th of July of that year, the bank purchased of Cox and Eckart two bills, for $5,000 each, dated on that day, at four months, drawn on Brunson and Colt, payable at Now York, and the only discount charged was'the interest at six per cent, per annum. These bills were not paid, but protested and returned. They were paid in Cincinnati, on March 21, 1837, with the addition of six per cent, damages, and eight dol *422 •Jars each, for costs of protest, postage, and interest at the rate of six per cent., per annum, from the date of maturity until paid. On November 29, 1836, the bank purchased another bill of Cox and Eckart, on New York, indorsed by Creed; the proceeds were applied to pay the first draft, and this was paid at maturity, in New York ; they are consequently out of the case. On,February 8, 1837, the bank bought of Cox and Eckart a bill drawn by Jo-line, indorsed by Creed, Ball & Co., on Cox and Eckart, payable in Now York, dated January 25, 1837, six months after date, for $10,000. This draft was protested in New York, and paid in Cincinnati, with interest, after maturity, protest and postage, and three and one-half per cent, exchange, being the difference of exchange between Cincinnati and New York, on March 21, 1837. Hall then gives the history of the purchase of the other bills, including those in *suit, and swears that no more than six per centum interest was reserved, with the regular rates of exchange, from time to time, between Cincinnati and the places where drawn payable.
On some occasions, the damages due the bank on protested bills, in renewing paper, were received, and no exchange charged. Mr. Hall never heard of any agreement, before the maturity of either of the bills, that the same should be extended. On some occasions, Cox and Eckart stated they had shipped produce to those on whom the bills were drawn, to meet them, and that they would be paid at maturity. That the transactions on the part of the bank were intended to be in good faith, and it was always supposed the bills would be met at maturity. On the Louisville bills, the bank charged six per centum interest per annum, and one per centum exchange, which was the market value of such bills, and the same rate at which they were purchased by other banks in Cincinnati; although exchange between the two places, Cincinnati and Louisville, on sight bills, was at par. There are other depositions, several letters, etc., which appear from the bill of exceptions to have gone to the jury without objection. With this testimony on a writ of error, and no exceptions to its admission, we have nothing to do in ordinary cases. It was probably spread but on this record, to show the true character of the litigation, and to enable us fully to comprehend the true import of the chargo of the learned judge, who presided on the trial in the court of common pleas. To the charge as given, and the refusal to *423 charge as requested, the exceptions alone were taken; it was tho origin of the supposed errors, for which tho writ of orror was prosecuted in the Supreme Court of Ross county, and for tho affirmance of which judgment of the common pleas, by the Supreme Court, this writ of error is before us.
The record then shows that, the evidence being closed, the counsel for Creed asked tho court to instruct the jury, that if they found any of the bills of exchange were negotiated by the bank on any contract or understanding, by which the bank was to have more than six per centum per annum, in advance, *for the loan of any money, under whatsoever name it might be taken, if it was received in fact, for tho loan, at a rate of interest exceeding six per centum per annum, any bill of exchange made to carry out such contract was void.
2. That if tho jury should find the bills of exchange, executed on August 1, 1837, were made in consideration of such usurious bill, in whole or in part, or formed a part of the consideration of the contract for the negotiation of said bills, or any of them, that such bill was void, and tho bank not entitled to recover on such bill or bills of exchange.
3, 4, 5, 6, and 7. The court were asked to charged the jury, in substance, the same in respect to each of the four bills in suit; and, that if any of the former bills were void, for any of the aforesaid reasons, and they formed any part of the consideration for the bills in suit, such bills were also void; and whether such void bills immediately or remotely formed a part of the consideration for the bills in suit; and whether such excess of interest was taken immediately on the bills in suit, or prior bills which formed a part consideration for the bills in suit, or whether such excess of interest was taken in the name of exchange, or otherwise, the bank was not entitled to recover. That any custom of the banks in Cincinnati, by which they take more than six per cent, per annum is void.
These instructions together, as prayed for, the court.refused to give; but charged that the clause in tho charter which permitted the defendants in error to discount upon banking principles and, usages, was as binding on the Commercial Bank, as the clause in the charter of the Bank of Chillicotho was upon it; and if the Commercial Bank violated its charter, in discounting a bill of exchange, not according to banking principles and usages, such con *424 tract would be void. But these principles and usages were the general principles throughout the commercial world, and not those of the banks of Ohio merely. That the usages of the banks of Cincinnati, where the Commercial Bank was situated, were chiefly to be regarded; but the usages of banks in the interior, such as Lancaster and Oircleville, were entitled to *but little weight. That the fact that such usages existed in Cincinnati, and not the legality thereof, was to be regarded; and if, by the established usages of the other Cincinnati banks, more than six per centum was taken on their loans, the Commercial Bank had the right to take more also.
The court also charged, that the law, fixing the rate of'interest, prohibited the Commercial Bank from taking more than six per centum; and if they took more, the excess was forfeited; and if they took more than they were authorized to do by the usage of banking, they forfeited only the excess, if they believed at the time they wore not exceeding banking principles and usages; but if they took such excess against the usages of the banks of the city, the whole transaction was void. This is substantially the charge of the court, and, if erroneous, and the plaintiff in error may have been prejudiced by it, the Supreme Court for Ross county erred in affirming the judgment.
In order to understand the nature of the defense and the application of the charge, I have before remarked that the evidence was spread out in the bill of exceptions. It is reasonable to suppose all the evidence in favor of the defendant below is before us in this case, and the whole charge may be disposed of in few words. A large portion of it, if erroneous, is so by being too strongly in favor of the plaintiff in error, and of this, he has no right to complain; and as to those parts of the charge which may be supposed to operate against the plaintiff in error, to wit, that if the Commercial Bank took more than six per centum, and acted in conformity with the usages of the other banks, and such usages wore illegal, the illegality could not be inquired into ; that if they violated the usages of banking, and did it in good faith, the excess only was void ; if in bad faith, or in violation of banking principles and usages, the whole transaction was invalid; and that the jury must principally regard the usages of the banks of Cincinnati, and look but little to banking through the commercial world, etc., it is perfectly clear the whole of it is entirely out of any case *425 made by the evidence. There is not one particle of testimony conducing to prove any such facts. The evidence *is perfectly conclusive, that no more than six per cent, interest was received; and if certain rates of exchange were received, they were the fair market rates at the time, and often in lieu of damages to which the bank was entitled on the protest of the bills, and for a less amount, when the bank might have received both. There was no evidence of any illegal customs, usages, or principles; no evidence of any excess of interest; and to decide that the Commercial Bank can not deal in exchanges, and either buy or sell at the fair and honest market value, would, in our view, contravene the whole current of decisions in other states; and there soems to us Co be nothing else in reality, in the ease at bar.
The judgment of the Supreme Court is affirmed.
Judgment affirmed.